# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID AMORY, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:15-cv-01535 (VAB) |
| | : | |
| JOETTE KATZ, ET AL., | : | |
| Defendants. | : | |

## RULING ON MOTIONS TO DISMISS

Plaintiff, David Amory, alleges a number of federal and state claims against the following Defendants: Joette Katz, Commissioner of the Connecticut Department of Children and Families ("DCF"); Michael Damici, social worker for DCF; the Town of New Milford; Shawn Boyne, Police Chief of the New Milford Police Department ("NMPD"); Peter DeLouis, NMPD Detective; and James Mullin, NMPD Detective.[1]  Mr. Amory's claims arise out of the Defendants' participation in the investigation of alleged child sexual abuse on the part of Mr. Amory.  Defendants removed the case to this Court in October 2015, and Mr. Amory filed his Amended Complaint in May of 2016.[2]  Am. Compl., ECF No. 45.  Defendants Joette Katz, Commissioner of the Connecticut Department of Children and Families ("DCF"), and Michael Damici, DCF social worker (together "State Defendants") have moved to dismiss Mr. Amory's claims under Fed. R. Civ. P. 12(b)(6).  Defendants Town of New Milford, New Milford Police

---

[1] All state and municipal employees are sued only in their individual capacity.

[2] The operative Complaint in this action is the Amended Complaint, ECF No. 45.  Without seeking leave of the Court, Mr. Amory filed an Amended Complaint in April 2016.  First Am. Compl., ECF No. 37.  After the Defendants filed separate motions to dismiss the Amended Complaint in January of 2015, *see* ECF Nos. 16, 17, the Court rejected the Amended Complaint as procedurally improper, and Mr. Amory subsequently sought leave of the Court to amend the Amended Complaint.  Mot. to Amend, ECF No. 41.  The Court granted Mr. Amory's motion, Mr. Amory filed the operative Amended Complaint in May of 2016, and the Court dismissed the Defendants' motions to dismiss as moot in light of the second Amended Complaint.  Order, ECF No. 46.

Chief Shawn Boyne and Detectives Peter DeLouis and James Mullin (together "Town Defendants") have also filed a motion to dismiss under Rule 12(b)(6).

For the reasons discussed below, Defendants' motions are **GRANTED**.

## I.      FACTUAL BACKGROUND

David Amory formerly owned Top Flight Sports Center ("Top Flight"), a business that provided sports instruction to children.  Am. Compl. ¶ 11.  Several years after the business opened, Top Flight began offering a childcare program.  *Id.*  In an effort to keep payroll costs low, Mr. Amory began working directly with the childcare program.  *Id.* at ¶¶ 11-12.

### A.  August 2011 Allegation of Abuse and Initial Investigation

In August 2011, the New Milford Police Department ("NMPD") received a report accusing Mr. Amory of inappropriately touching A.L., a seven-year-old girl who attended the Top Flight childcare program.  *Id.* at ¶ 13.  A.L.'s parents contacted NMPD, and NMPD in turn contacted the Connecticut Department of Children and Families ("DCF").  *Id.* at ¶ 17.  Less than a week after receiving the report, DCF representatives arrived at Top Flight along with representatives of the Connecticut Department of Public Health ("DPH") to investigate the allegation of sexual abuse.  *Id.* at ¶ 18.  DCF interviewed six staff members during that visit, including Mr. Amory, as well as several children who participated in the program.  *Id.*  A DCF Child Abuse Investigation Team ("CAIT") subsequently conducted a forensic interview of A.L. *Id.* at ¶ 21.  Two months later, in November 2011, the NMPD interviewed Mr. Amory about the alleged abuse.  *Id.* at ¶ 24.  That same month, DCF sent Top Flight a written notice of substantiation of abuse.  *Id.*

In December 2011, DPH informed Top Flight that its childcare license had been violated and offered Mr. Amory an opportunity for a compliance meeting to discuss the violations further.

*Id.* at ¶ 26.  Mr. Amory attended the compliance meeting in January 2012 along with his attorney, Amy Klein.  *Id.* at ¶¶ 27-28.  Ms. Klein declined DPH's offer to hold a formal hearing and instead drafted a licensing corrective action plan for DPH's review.  *Id.* at ¶¶ 28-29.  Mr. Amory and DPH ultimately agreed to a licensing corrective action plan that removed Mr. Amory from several responsibilities and restricted him to performing only administrative duties.  *Id.* at ¶ 29.

In March 2012, DPH conducted a follow-up inspection of Top Flight's records on site. *Id.* at ¶ 31.  That same week, during a meeting with Mr. Amory, DCF formally reversed its previous substantiation of abuse, concluding that there was ultimately not enough evidence to establish that the alleged abuse took place, and they closed the case.  *Id.* at ¶ 33.  Shortly thereafter, the NMPD case was also closed.  *Id.*

### B.  June 2012 Allegation of Abuse and Second Investigation

In the following months, Mr. Amory contacted DPH several times to inquire about the status of his childcare license.  *Id.* at ¶¶ 38-39.  In June 2012, before a final decision had been issued regarding his license, Mr. Amory agreed to help supervise a group of children while they watched a movie as part of the Top Flight summer camp.  *Id.* at ¶ 42.  During that time, M.M., a seven-year-old girl who participated in the program, climbed on Mr. Amory's leg while the movie was playing.  *Id.* at ¶ 43.  Later that day, M.M. told her stepfather that Mr. Amory had touched her inappropriately, and M.M.'s parents subsequently made a report to the NMPD.  *Id.* at ¶¶ 46, 65.  Top Flight reported the incident to DCF.  *Id.* at ¶ 48.  A licensed professional counselor selected by the DCF child abuse investigation team conducted a forensic interview of M.M., during which the child confirmed the allegations against Mr. Amory.  *Id.* at ¶ 57.

After the incident was reported to the police and to DCF, DPH contacted Mr. Amory and told him that the State would be pursuing the revocation of his childcare license. *Id.* at ¶ 55. Mr. Amory signed a voluntary revocation of license, which was posted on the DPH website, and Top Flight closed its summer camp that same week. *Id.* The program's closure was featured in several news programs and newspaper articles. *Id.* at ¶¶ 67-71.

### C.  August 2012 Allegation of Abuse and Third Investigation

On August 01, 2012, within two months of Top Flight's closure, the NMPD received a third report of alleged child sexual abuse on the part of Mr. Armory. *Id.* at ¶ 72. According to Mr. Amory, in the wake of the program's closure, the parents of S.B., another child who had participated in Top Flight's program, repeatedly asked their daughter whether anything inappropriate had happened during the program. *Id.* at ¶¶ 72-73. After initially denying that anything had taken place, S.B. eventually told them that Mr. Amory had touched her inappropriately on several occasions. *Id.* S.B. was eight years old at the time of the alleged contact. *Id.* NMPD Detective Mullin conducted various interviews in connection with S.B.'s allegations, including interviews of S.B.'s immediate family and Top Flight staff. *Id.* at ¶ 77. During the same time frame, DCF posted a substantiation of abuse and neglect as to the allegations regarding M.M. *Id.* at ¶ 78.

Later that month, the DCF child abuse investigation team conducted a forensic interview of S.B., which Mr. Amory claims did not incorporate DCF "best practices" and proper interview protocols in the use of drawings and anatomical dolls. *Id.* at ¶¶ 79, 81, 93-94. During the interview, S.B. confirmed her previous allegations against Mr. Amory. *Id.* at ¶ 94. On August 28, 2012, Detective DeLouis completed an affidavit for an arrest warrant application in connection with the alleged sexual assault of both M.M. and S.B., and the arrest warrant was

signed by a magistrate judge on October 2, 2012.  *Id.* at ¶¶ 96, 101.  On September 27, 2012,

DCF posted a final notice of substantiation as to S.B.'s allegations, signed by DCF social worker

Damici.  *Id.* at ¶ 100.

### D.  Criminal Prosecution of Mr. Amory

The arrest warrant was executed, and two separate criminal sexual assault charges were

brought against Mr. Amory.  *Id.* at ¶ 109.  The case went to trial before a jury in Connecticut

Superior Court in May of 2015.  *Id.*  The trial lasted almost two weeks, and the jury ultimately

returned a verdict of Not Guilty.  *Id.* at ¶ 113.  In light of the jury's verdict, all charges against

Mr. Amory were dismissed in July of 2015.  *Id.* at ¶ 135.

## II.    STANDARD OF REVIEW

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.*  In determining whether a complaint states a plausible

entitlement to legal relief, the Court must accept all factual allegations in the complaint as true

and draw all reasonable inferences from those allegations in the light most favorable to the

plaintiff.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

This "plausibility standard" is guided by "[t]wo working principles."  *Iqbal*, 556 U.S. at

678.  First, the requirement that a court accept as true the allegations in a complaint "'is

inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d

Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  Second, to survive a motion to dismiss, the claim

for relief alleged in the complaint must be plausible.  *Iqbal*, 556 U.S. at 679.  Determining

whether a complaint states a plausible claim for relief is "a context specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.*

## III.   DISCUSSION

Mr. Amory seeks monetary damages from various state and municipal employees and

from the Town of New Milford in connection with multiple investigations of alleged child sexual

abuse.  In Counts One and Two of his Amended Complaint, Mr. Amory brings two separate

"failure to train" claims under 42 U.S.C. § 1983.  *Id.* at ¶¶ 140-149.  He claims that Joette Katz,

Commissioner of DCF, the Town of New Milford, and NMPD Chief Shawn Boyne failed to

adequately train their investigation teams in proper forensic interviewing or investigation

techniques in child abuse cases.  *Id.*  In Counts Three and Four of the Amended Complaint, Mr.

Amory brings claims of false arrest and malicious prosecution against Detective DeLouis and

Detective Mullin, both of whom are NMPD officers, alleging that they misrepresented facts in

their application for a search warrant and that they prosecuted Mr. Amory on criminal charges

without probable cause in violation of his Fourth and Fourteenth Amendment rights.  *Id.* at ¶¶

150-162.  In Count Five of the Amended Complaint, Mr. Amory brings a "fabrication of

evidence" claim against Detective DeLouis and Detective Mullin, alleging that both individuals

violated his Fourteenth Amendment rights by intentionally misrepresenting evidence in their

application for an arrest warrant and by failing to preserve potentially exculpatory video

evidence.  *Id.* at ¶¶ 163-167.

In addition to these federal claims, Mr. Amory has also alleged several claims under

Connecticut law.  Mr. Amory brings six separate state law claims against Defendants Mullin and

DeLouis, alleging false arrest (Count Six), malicious prosecution (Count Seven), fabrication of evidence (Count Eight), intentional infliction of emotional distress (Count Nine), gross deviation from reasonable care (Count Eleven), and recklessness (Count Twelve). *Id.* at ¶¶ 168-178, 182-187. Mr. Amory brings three state law claims against DCF Social Worker Michael Damici, the DCF investigator responsible for overseeing the investigations of Mr. Amory, alleging intentional infliction of emotional distress (Count Ten), gross deviation from reasonable care (Count Sixteen), and recklessness (Count Seventeen). *Id.* at ¶¶ 179-181, 196-200. Finally, Mr. Amory brings two state law claims against the Town of New Milford, seeking respondeat superior liability and indemnification for the claims against its employees (Counts Fourteen and Fifteen). *Id.* at ¶¶ 191-195.

Mr. Amory's claims are outlined in turn below. The Court begins its analysis with the federal law claims, and then turns to Mr. Amory's state law claims.

### A. Failure to Train

Mr. Amory claims that Joette Katz, as Commissioner of DCF, violated his constitutional rights by failing to adequately train her employees in forensic interviewing techniques and appropriate child abuse investigation tactics and by failing to adequately supervise the child abuse investigation team responsible for the investigations of Mr. Amory. *Id.* at ¶ 143. He brings a separate claim against the Town of New Milford and Police Chief Shawn Boyne, arguing that they similarly failed to provide training and supervision to the police department in conducting interviews and investigations in connection with the alleged child sexual abuse. *Id.* at ¶ 149. Mr. Amory seeks to bring both of these "failure to train" allegations under section 1983 as *Monell* claims, made viable by the Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

Under *Monell,* an individual plaintiff may bring a section 1983 action against municipalities and related government officials for monetary relief when a municipality's officers have adopted and promulgated unconstitutional policies.  *Id.* at 690 ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers").  A city's policies must be the "moving force" behind the alleged constitutional violation in order for those policies to serve as the basis for a section 1983 claim.  *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389 (1989) (citing *Monell*, 436 U.S. at 694; *Polk County v. Dodson,* 454 U.S. 312, 326 (1981)).  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  *Id.*

A *Monell* claim is actionable only as to local governing entities and related municipal officials.  *Monell,* 436 U.S. at 690 n.54 ("Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes").  Where the relevant governing entity would be liable under *Monell,* individuals acting in their official capacity may also, in some circumstances, be held liable for their role in the alleged constitutional violations.  *See Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist*., 238 F.Supp.2d 469, 475 (N.D.N.Y. 2002) ("in order for an individual to be liable in his or her official capacity under § 1983, the liability of the governmental agency must be established under *Monell*" (citing *Kentucky v. Graham,* 473 U.S. 159, 166 n.14 (1985))).  However, a state agency, as a non-municipal entity, cannot be subject to municipal liability under *Monell*;

accordingly, because DCF is a state agency, Mr. Amory's claims against Commissioner Katz in her capacity as a policy-maker for DCF are not viable *Monell* claims.  *See Monell,* 436 U.S. at 690 n.54; *Quern v. Jordan,* 440 U.S. 332, 338 (1979).

Furthermore, in no event does the *Monell* analysis of governmental policy or practice apply to allegations against someone acting in his or her individual capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985) (distinguishing personal capacity actions from *Monell* actions).  "A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him."  *Id.*  In order to establish personal liability under § 1983, the standards outlined in *Monell* are irrelevant; rather, the plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right" and that the individual is not immune from the claimed liability.  *Id.*; *see also* Martin A. Schwartz, *Sec. 1983 Litig. Claims & Defenses* § 7.01 (4th Ed. 2016) (explaining that *Monell* applies to municipal liability; Eleventh Amendment immunity governs state liability; and "[w]hen the claimant attempts to establish the personal liability of a public official, the common-law absolute and qualified immunities come into play").

### 1.   Defendant Katz

Mr. Amory attempts to bring a *Monell* claim against Commissioner Katz "only in her individual capacity[.]"  Am. Compl. ¶ 3.  As noted, *Monell* does not apply to state officials or to individuals who are sued in their individual capacity, thus this Court will construe Mr. Amory's claims as Fourth and Fourteenth Amendment claims under section 1983.  The State Defendants argue that Commissioner Katz is protected by qualified immunity.  State Defs. Mem. in Supp. at 8-11, ECF No. 48-1. The State Defendants further argue that dismissal is justified because Mr.

Amory has failed to plead Commissioner Katz's personal involvement in the violation of any recognizable federal right.  *Id.* at 28-31.

"A government employee sued in her individual capacity for damages arising out of her performance of discretionary functions is entitled to qualified immunity where it was objectively reasonable to believe that her acts did not violate clearly established federally protected rights." *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Robison v. Via*, 821 F.2d 913, 920 (2d Cir. 1987)).  "The qualified immunity defense may be upheld as a matter of law when the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendant to believe that she was acting in a fashion that did not violate such a right."  *Id.*

Here, the damages alleged as to Commissioner Katz arise directly out of her discretionary functions as Commissioner of DCF.  At the heart of Mr. Amory's claim is Commissioner Katz's alleged failure to carry out her "supervisory and/or policy making authority," which, according to the Amended Complaint, was "[b]ased on the duties charged to Katz."  Am. Compl. ¶¶ 141-142.  The Amended Complaint also specifies that Commissioner Katz acted "through DCF" in establishing the contested policies and practices.  *Id*. at ¶ 143.  Thus, the first prong of the qualified immunity test is established here.  *Gottlieb,* 84 F.3d at 518.

Furthermore, Mr. Amory has failed to specify any "clearly established rights" that were violated by Commissioner Katz's conduct.  The Amended Complaint repeatedly lists specific categories of specialized training that DCF allegedly fails to provide to its child abuse investigation teams.  Specifically, Mr. Amory accuses Commissioner Katz of failing to train her

teams in the following areas: "'TAINT' – the reliability of alleged disclosures"; "proper techniques in determining reliability"; "interviewer bias"; "improper use of anatomical dolls"; and a number of other tactics and types of information. *Id.* at ¶¶ 119, 132, 134.  In a conclusory fashion, the Amended Complaint alleges that these gaps in training violated Mr. Amory's Fourth and Fourteenth Amendment rights; however, Mr. Amory never specifically alleges which aspects of these rights were violated by Commissioner Katz's actions, nor does he ever allege that his rights were clearly established at the time Commissioner Katz oversaw the investigations in his case.  The Court is not aware of any clearly established constitutional right that would require DCF to incorporate Mr. Amory's list of specified trainings into their child abuse investigations, and Mr. Amory has not identified any case law suggesting that such a right exists.

In fact, the allegations of the Amended Complaint do not suggest that the DCF investigation techniques applied in his case were out of line with the predominant investigation techniques at the time.  The Amended Complaint alleges that the DCF investigators used anatomical dolls in the context of forensic interviews, which, according to an expert witness who testified at Mr. Amory's criminal trial, are "no longer proper protocol." *See id.* at ¶ 60. However, the Amended Complaint never alleges that the techniques used were not "proper protocol" at the time of the relevant investigations.  Construing the allegations in the light most favorable to Mr. Amory, Commissioner Katz's alleged failure to train DCF child abuse investigation teams in the specified specialized investigation tactics could suggest, at most, negligence, and negligence is not actionable under section 1983.  *See Pace v. Montalvo,* 186 F.Supp.2d 90, 98 (D. Conn. 2001) ("to the extent that the Plaintiffs claim that the investigation which led to the filing of the neglect petitions was incomplete or inaccurate, that would, at most, amount to a claim of simple negligence.  Such a claim is insufficient to state a cause of action

under Section 1983"). In the absence of factual allegations suggesting that Commissioner Katz violated "clearly established federally protected rights," Commissioner Katz's qualified immunity defense stands; as Mr. Amory is seeking only monetary claims against her, his claims against her must fail. *See Gottlieb,* 84 F.3d at 518.

Even apart from this qualified immunity analysis, Mr. Amory's allegations fail to state a claim as to Commissioner Katz. It is well-settled that an individual must be personally involved in a constitutional deprivation in order for that individual to be held liable for damages under section 1983. *See Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 413 (E.D.N.Y. 2013) ("An individual officer's personal involvement in the 'constitutional deprivation[ ]' is a 'prerequisite' to a Section 1983 claim against them." (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977))). "For liability to accrue, it is not enough for the defendant simply to be a 'policy maker' at the time unconstitutional events occur." *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir. 2000). Rather, where liability is based on an individual's policy-making and supervisory responsibilities, a more direct connection to a recognized constitutional violation is needed. No such connection has been plausibly alleged here.

Commissioner Katz is immune from liability for money damages based on principles of qualified immunity. Furthermore, Mr. Amory's section 1983 claim against Commissioner Katz fails to allege any facts suggesting her personal involvement in a recognized constitutional violation that is sufficient to state a claim for relief. Accordingly, Count One of the Amended Complaint is dismissed.

### 2. Defendant Town of New Milford

Mr. Amory brings a nearly identical "failure to train" claim against the Town of New Milford. According to the Town Defendants, this claim should be dismissed because Mr. Amory

has not plausibly alleged any causal link between a municipal policy and a violation of his

constitutional rights as required for a valid *Monell* claim.  Town Defs. Mem. in Supp. at 16-20,

ECF No. 53-1.

"In order to establish the liability of a municipality in an action under § 1983 for

unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must

show that the violation of his constitutional rights resulted from a municipal custom or policy."

*Gottlieb,* 84 F.3d at 518 (citing *City of Canton*, 489 U.S. at 389; *Oklahoma City v. Tuttle*, 471

U.S. 808, 823–24 (1985) (plurality opinion); *Monell v. Department of Social Services*, 436 U.S.

658, 694 (1978)). "Thus, our first inquiry in any case alleging municipal liability under § 1983 is

the question whether there is a direct causal link between a municipal policy or custom and the

alleged constitutional deprivation."  *City of Canton,* 489 U.S. at 385.

The Amended Complaint repeatedly states that the New Milford Police Department, like

DCF, generally does not offer training in several categories that would allegedly be helpful in

connection with child abuse investigations.  However, the absence of training in these areas

cannot give rise to liability under the Constitution unless the failure to provide the training

"amounts to deliberate indifference to the rights of those with whom municipal employees will

come into contact."  *McLaurin v. New Rochelle Police Officers,* 368 F.Supp.2d 289, 293-94

(S.D.N.Y. 2005) (indicating that a failure to train or supervise requires "deliberate indifference"

in order to constitute a "policy" under *Monell* and dismissing *Monell* claim for failure to

adequately plead the existence of a municipal "policy").

The Amended Complaint does not include any factual allegations indicating "deliberate

indifference" on the part of the Town of New Milford.  Instead, the Amended Complaint simply

lists categories of specialized training that were not provided to New Milford police officers,

remaining silent as to any actual or constructive knowledge on the part of the Town regarding the alleged negative impact to individuals' rights.  *See Maye v. Durkin,* No. 3:10-cv-194 (VLB), 2012 WL 2521101, at *5 (D. Conn. Jun. 28, 2012) (dismissing *Monell* claim against City of New Haven where complaint failed to plausibly allege that the police department had actual or constructive knowledge of misconduct as required to constitute a municipal policy under *Monell*).  The only direct references to the Town of New Milford are conclusory, stating generically that the Town "has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs…"  Am Compl. ¶ 149. More is needed in order to survive a motion to dismiss – Mr. Amory must include some factual basis for the conclusion that the Town of New Milford was deliberately indifferent in its failure to train its investigators.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Without plausibly pleading deliberate indifference on the part of the Town, the alleged failure to train cannot constitute a "policy" as required for a *Monell* claim. In the absence of a direct link to any municipal policy or custom, Mr. Amory's *Monell* claim cannot proceed.  *City of Canton,* 489 U.S. at 385. It is not enough for the Court to find that the investigation tactics of the New Milford Police Department at the time were less careful than would be ideal; the burden ultimately falls on the plaintiff to "'prove the existence of a municipal policy or custom' that caused his injuries." *McLaurin*, 368 F.Supp.2d at 293 (quoting *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied,* 480 U.S. 916, 107 (1987)).  Apart from such a policy, there can be no *Monell* liability as to the Town of New Milford.

As Mr. Amory has failed to plausibly allege that the New Milford Police Department's failure to train its police officers in the specified areas amounted to "deliberate indifference" as

required to constitute a municipal policy under *Monell*, Count Two is dismissed as to the Town of New Milford.

### 3. Defendant Boyne

Mr. Amory's remaining failure to train claim against Chief Boyne fails for the same reasons that support the dismissal of his claim against Commissioner Katz.  The claims against Chief Boyne arise out of his discretionary functions as Police Chief, and as described in further detail below, Mr. Amory has failed to identify any clearly established rights that were violated by Chief Boyne's supervision and training of NMPD officers.  Accordingly, Chief Boyne is protected by qualified immunity and cannot be liable for the monetary damages Mr. Amory seeks.  *See Gottlieb,* 84 F.3d at 518.  Thus, Count Two is dismissed as to Chief Boyne.

## B.  False Arrest

In addition to his failure to train claims against the Town of New Milford and the Chief Boyne, Mr. Amory also seeks to hold Detectives DeLouis and Mullin, both individual NMPD officers, liable for money damages under section 1983 for alleged violations of his constitutional rights. Am. Compl. ¶¶ 150-162.  Mr. Amory specifically claims that these officers made a false and deficient application for an arrest warrant, alleging liability for false arrest in violation of Mr. Amory's Fourth and Fourteenth Amendment rights.  *Id.*  The Town Defendants argue that the arrest warrant was supported by probable cause, thus Mr. Amory's cannot state a valid claim for false arrest under section 1983.

"It is settled that a person has a clearly established right not to be arrested or prosecuted without probable cause." *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Gonzalez*

*v. City of Schenectady,* 728 F.3d 149, 155 (2d Cir. 2013) (internal citations and quotes omitted). The issuance of an arrest warrant by a neutral magistrate judge generally creates a "presumption that it was objectively reasonable for the officers to believe that there was probable cause"; for this reason, "a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991).

In order to argue that a warrant was issued without probable cause successfully, "a plaintiff must show that the officer 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause.'" *Kaskel v. Compagnone*, No. 15-3802-CV, 2016 WL 6885701, at *1 (2d Cir. Nov. 22, 2016) (citing *Soares*, 8 F.3d at 920); *see also McColley v. County of Rensselaer,* 740 F.3d 817, 823 (2d Cir. 2014); *Tyus v. Newton*, No. 3:13-CV-1486 (SRU), 2015 WL 1471643, at *6 (D. Conn. Mar. 31, 2015). If a "corrected" warrant application would still support a finding of probable cause, then the allegedly false or omitted information could not have been "necessary," and the false arrest claim must fail as a matter of law. *See McColley*, 740 F.3d at 823 (citing *Escalera v. Lunn,* 361 F.3d 737, 743-44 (2d Cir. 2004)).

Mr. Amory has failed to plausibly plead a lack of probable cause in this case, as none of the allegedly false or omitted information was "necessary" to the probable cause finding underlying the arrest warrant. The Amended Complaint alleges that Detective DeLouis, who completed the sworn affidavits associated with Mr. Amory's arrest warrant, was generally lacking in experience and specialized training with respect to child abuse investigations. Am. Compl. ¶¶ 96-97. Detective DeLouis' alleged lack of specialized training, however, does not negate the finding of probable cause on the part of a neutral magistrate judge.

16

The Amended Complaint further alleges that the arrest warrant affidavits were incorrect in the following ways: they improperly described M.M. as "sitting on Amory's lap" when in fact she was "straddling his right leg"; they failed to include relevant testimony from a Top Flight employee suggesting that the other children had not "seen anything unusual" at the time of the alleged incident; and they failed to include information from a number of interviews that never took place, but allegedly would have revealed helpful information. *Id.* at ¶¶ 98-101. Nevertheless, the unambiguous facts alleged in the Amended Complaint, taken as true, indicate that none of this information "would have negated probable cause" as Mr. Amory claims. *Id.* at ¶ 153.

According to the Amended Complaint, there were three independent reports of child sexual abuse from parents of young girls who had participated in the Top Flight programs. DCF posted a substantiation of abuse regarding those allegations, and DPH supported the voluntary revocation of Mr. Amory's childcare license. Each of these undisputed facts provides strong support for the judge's conclusion that probable cause existed as to the alleged sexual abuse in this case. Taking as true all of the factual allegations included in the four corners of the Amended Complaint, the general allegations offered in support of Mr. Amory's false arrest claim are not sufficient to overcome the strong presumption of probable cause here.

Even if the warrant application were "corrected" to include the alleged omitted details, the undisputed facts nonetheless support a finding of probable cause. Accordingly, Count Three of the Amended Complaint is dismissed.

### C.  Malicious Prosecution

Based on the same underlying facts, Mr. Amory alleges that Detective DeLouis and Detective Mullen are liable for malicious prosecution in violation of his Fourth and Fourteenth

Amendment rights.  However, Mr. Amory's malicious prosecution claim suffers from the same flaws present in his false arrest claim and must also be dismissed.

"To succeed on a claim of malicious prosecution, the plaintiffs must show (1) the defendants' commencement or continuation of the proceeding against them, (2) the termination of the proceeding in their favor, (3) the absence of probable cause for the proceeding, and (4) actual malice."  *Simmons v. Chemung County Dept. of Social Services,* 770 F.Supp. 795, 801 (W.D.N.Y. 1991) (citing *Broughton v. State of N.Y.*, 37 N.Y.2d 451, 457, *cert. denied,* 423 U.S. 929 (1975)); *see also Manganiello v. City of N.Y.*, 612 F.3d 149, 160-161 (2d Cir. 2010); *Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012) ("An element of any malicious prosecution claim is the absence of probable cause").  In order for a malicious prosecution claim to survive a motion to dismiss, "[i]t is not enough for the plaintiff to show that the state investigators could have done more or could have disclosed more"; rather, the plaintiff must "demonstrate that the defendants deviated egregiously from accepted practices of investigation or otherwise engaged in conduct that 'shocks the conscience.'"  *Simmons,* 770 F.Supp. at 801-802 (dismissing malicious prosecution claim based on allegations of inappropriate investigation tactics during child abuse investigation, recognizing that, while the allegedly inappropriate "methods are far from ideal, allegations of child abuse often require investigators to make difficult determinations concerning a child's credibility").

As indicated above, the arrest and prosecution of Mr. Amory was supported by probable cause, defeating an essential element of this claim.  Mr. Amory has not alleged any facts that would overcome this conclusion.  Accordingly, Count Four of the Amended Complaint is dismissed.

### D. Fabrication of Evidence

Mr. Amory's final federal claim alleges that Detectives DeLouis and Mullin violated his due process rights by intentionally fabricating evidence against him.  This claim is based on Detective Mullin's alleged failure to preserve a three-week video surveillance tape that allegedly would have demonstrated Mr. Amory's innocence by showing different angles of the scene of the alleged sexual abuse of M.M.  This claim is also based on each of the alleged misrepresentations and omissions described above in connection with the arrest warrant application.  Am. Compl. ¶¶ 163-164.

A police officer may be liable for damages under section 1983 when he or she falsifies evidence for use in a criminal case.  *See Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983").  However, Mr. Amory has failed to state a claim for fabrication of evidence, as his factual allegations regarding the evidence used in the criminal case against him do not actually include any specific claims of fabrication.  Rather than accusing Detective DeLouis and Detective Mullin of creating false evidence against him, Mr. Amory accuses them of omitting potentially helpful information; namely, interviews with important witnesses and potentially exculpatory video evidence.  *Id.* at ¶¶ 98-101.  The only allegations that include actual fabrication or falsification of evidence are conclusory statements that the officers' descriptions of events were "false."  *Id.* at ¶¶ 164-165.

As Mr. Amory has not alleged any facts suggesting that Detectives DeLouis and Mullen fabricated evidence in violation of Mr. Amory's constitutional rights, Count Five of the Amended Complaint is dismissed.

### E.  State Law Claims

As indicated above, all federal claims are dismissed for failure to state a claim under Rule 12(b)(6).   When federal claims are dismissed prior to trial, district courts are instructed to decline supplemental jurisdiction over any remaining state law claims.  *See, e.g. Kolari v. N.Y.-Presbyterian Hosp*., 455 F.3d 118 (2d Cir. 2006) (holding that district court's exercise of supplemental jurisdiction over state law claims was not justified following dismissal of all federal claims); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").  Accordingly, the Court declines to exercise supplemental jurisdiction over Mr. Amory's state law claims at this time, and Counts Six through Seventeen of the Amended Complaint are dismissed without prejudice to re-filing in Connecticut Superior Court.

### IV. CONCLUSION

As Mr. Amory has already amended his Complaint twice, the Court finds that further amendment of the Amended Complaint would be futile.  *See Lucente v. Int'l Bus. Machines Corp*., 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears that granting leave to amend is unlikely to be productive… it is not an abuse of discretion to deny leave to amend." (citing *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993)).  Mr. Amory's federal claims (Counts One, Two, Three, Four and Five) are **DISMISSED** with prejudice.  Mr. Amory's state law claims (Counts Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen,

Sixteen and Seventeen) are **DISMISSED** without prejudice to re-filing in Connecticut Superior Court.  The Clerk of the Court is directed to close this case.

SO ORDERED in Bridgeport, Connecticut this 19th day of December, 2016.

/s/ Victor A. Bolden                                  
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE